

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

SUPERIOR COURT
CIVIL ACTION NO.

| | |
|---|---|
| EDIMARA DEMELO<br><br>and<br><br>EDILSON DEMELO<br><br>    Plaintiffs<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION<br><br>    Defendant | JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

NOW COMES, Edimara Demelo (hereinafter "Ms. Demelo") and Edislon Demelo (hereinafter "Mr. Demelo") (collectively "Plaintiffs") by and through their Attorneys, and bring this verified complaint (hereinafter "the Complaint") and demand for trial. In support thereof, Plaintiffs, on information and belief, state as follows:

### PRELIMINARY STATEMENT

1. Plaintiffs face the loss of their home, which was taken from them through a wrongful foreclosure action by U.S. Bank National Association (hereinafter "U.S. Bank" or "Defendant"). Thus, Plaintiffs seek permanent injunctive relief and damages to remedy, address, and prevent additional harm from arising as a result of Defendant's unfair and illegal practices.

Process of Handling Legal Notices
Date: 1/17/12   Time: 1305
Place of Delivery: RPM ____
Method of Delivery: ____
Title of Action: Demelo v. USB
Person Receiving Delivery: ____

## JURISDICTION AND VENUE

2. This Court has jurisdiction over all claims pursuant to Massachusetts General Laws Chapter 212, Section 4.

3. This Court has jurisdiction over the Defendant pursuant to Massachusetts General Laws Chapter 223A, Sections 2-4.

4. Venue is appropriate in this Court as the events in question, including the property at issue, occurred in Middlesex County.

## PARTIES

5. Plaintiff, Edimara Demelo, resides with her husband, Edislon Demelo, at 8 Gould Street, Unit 2, Stoneham, MA 02180.

6. Plaintiff, Edislon Demelo, resides with his wife, Edimara Demelo, at 8 Gould Street, Unit 2, Stoneham, MA 02180.

7. Upon information and belief, Defendant U.S. Bank, National Association (hereinafter "U.S. Bank") is established under the laws of the United States of America and having its usual place of business at 3121 Michaelson Drive, Suite 500, Irvine, CA 92612.

## STATEMENT OF FACTS

8. Plaintiffs immigrated to the United States with their family in 1997. Their understanding of English is limited; however, through hard work they have been able to make honest living in the United States.

9. On September 26, 2003, Plaintiffs purchased the property located at 8 Gould Street, Unit 2, Stoneham, MA 02180 (hereinafter "the Property") for $392,000 and made it their home. They financed this purchase with a 30-year home loan from First Horizon Home

Loan Corporation in the amount of $375,250. The home loan contained a fixed rate of interest of 6.5 interest rate clause. Plaintiffs paid a monthly mortgage payment of approximately $2,850, including taxes and insurance.

10. Plaintiffs were contacted by a mortgage broker with Allied Home Mortgage at the end of 2004. This broker promised Plaintiffs that, through a refinancing transaction, they could reduce their monthly mortgage payment by $1000. Plaintiffs relied on the promises and statements of the broker from Allied Home Mortgage and on December 21, 2004 accepted the refinancing product and agreed to grant a mortgage to Downey Savings Loan Association (hereinafter "Downey Savings") The new mortgage on the Property had a 30-year adjustable rate.

11. This new home loan (hereinafter "the Mortgage" or "the Loan") was in the amount of $388,000 and contained a convoluted and complex interest and payment provisions that undercut the Plaintiff's ability to pay mortgage payments. The extent of the loan amount also eradicated all equity in the Property.

12. The Loan was executed on December 21, 2004, with an initial interest rate of 5.85%. On January 1, 2005, the rate of interest dropped to 1%. However, on February 1, 2005, and every month thereafter, the rate of interest was subject to change. Each month, a new rate of interest was determined by adding 3.9% to the monthly weighted average cost of savings, borrowings and advances of members of the Federal Home Loan Bank of San Francisco.

13. To make matters worse, although the rate of interest changed every month, the stated monthly payment billed to Plaintiffs was fixed for the entire year. Furthermore, every year the billed payment could not increase by more than 7.55, even though the actual rate

of interest accruing continued to increase every month. In other words, the monthly payment amount for the entire first year was calculated as if the Loan was accruing interest at the 1% rate, but after the first month, interest accrued at a much higher rate, meaning that even the full payments did not fully discharge the monthly debt.

14. As stated above, the monthly payment for the entire first year of the Loan was calculated based on a one percent interest rate. However, after the first month, the Loan accrued interest at the higher, adjustable rate. As a result of these terms, Plaintiffs' monthly payments did not cover their accrued interest and consequently the principal balance of the Loan increased every month. As the principal balance of the Loan was destined to increase, it contained a clause that demanded that once the outstanding principal balance reached 110% of the original $388,000, the monthly payments would immediately increase such that they would satisfy the entire owed interest and principal payment, leading inevitably to a massive "payment shock" when the fully monthly payments were demanded.

15. Based on the submitted loan application and other submitted financial information, there was no foreseeable way that Plaintiffs could ever afford the Loan over the long-run. Thus, it is clear that the Loan was granted solely on the basis of the appraised value of the Property and not on Plaintiffs' ability to pay.

16. Initially, Plaintiffs monthly mortgage obligations amounted to approximately $1700. Their payments then increased by $100 the following year and by another $100 the year after that. As stated, those payments did not actually satisfy the full amount of principal and interest owed on a monthly basis, and created negative amortization. Therefore, by

the third year, the outstanding principal of the Loan had reached 110% of the original balance and the entire principal and interest became due on a monthly basis.

17. In February of 2008, Plaintiffs were stunned to learn that the Loan's interest rate had risen to over 8% and that the monthly payment had dramatically increased to approximately $3,850, which was more than $1000 of the original home loan. Plaintiffs were also staggered because they had thought that the interest rate would remain fixed for at least the first five years of the life of the Loan.

18. In addition to the increased monthly payment, Plaintiffs realized that the principal balance of the Loan increased by $1500 every month and that they could not comprehend why, after making their monthly payments for over three years, they owed more money then they had originally agreed to borrow by accepting the refinancing product.

19. Around the time when the Loan originated, Plaintiffs were earning an income of approximately $6,600 per month. Thus, even the new initial payment amount required Plaintiffs to pay nearly 60% of their income.

20. On or about February 2008, Plaintiffs could no longer afford the Loan after the monthly payments jumped to approximately $3,850. Consequently, Plaintiffs immediately contacted the servicer and lender for assistance. However, they did not provide Plaintiffs with relief or assistance.

21. At some point Defendant claimed that it became the holder of the Mortgage. A good faith search of the Middlesex Registry of Deeds did not discover an assignment of the Mortgage to Defendant.

22. During 2011, Plaintiffs submitted a loan modification application to Defendant pursuant to the Home Affordable Modification Program (hereinafter "HAMP"). Plaintiffs

diligently provided all of the requested information and on July 5, 2011, Defendant notified them by letter that the request for a loan modification was under review.

23. Plaintiffs received no further communication from Defendant until Defendant sold the Property at a foreclosure auction on July 25, 2011.

24. Plaintiffs did not receive a notice of the July 25, 2011 foreclosure date.

25. Plaintiffs were shocked and in severe distress when Defendant suddenly and without notice foreclosed on the Property. Plaintiffs continue to live every day under severe stress and anxiety as their future remains precarious.

26. On August 25, 2011, Plaintiffs sent a demand letter to Defendant pursuant to M.G.L. c. 93A. Defendant did not respond with a settlement offer.

27. On September 26, 2011, Defendant filed a summary process complaint to evict Plaintiffs. The complaint was later dismissed after Defendant failed to appear at the summary process hearing.

## CAUSES OF ACTION

### Count I

*Breach of the Duty of Good Faith and Reasonable Diligence*

28. Plaintiffs repeat and re-allege paragraphs 1 through 27 as though set forth fully herein.

29. By exercising the power of sale in the Mortgage, Defendant owed a duty of good faith and reasonable diligence to Plaintiffs in its conduct, actions or proceedings related to the foreclosure sale of the Property.

30. The duty of good faith and reasonable diligence requires a lender to consider a borrower for reasonable alternatives to foreclosure. A loan modification, where appropriate, can be such a reasonable alternative to foreclosure.

31. At the time of the foreclosure, Plaintiffs were under review for a loan modification.

32. Defendant breached the duty of good faith and reasonable diligence by foreclosing on the Property while Plaintiffs were under review for a loan modification.

33. Defendant breached the duty of good faith and reasonable diligence by foreclosing on the Property without providing notice of the foreclosure date to Plaintiffs.

34. Plaintiffs assert that the Property should be deeded back to them and Defendant should pay damages.

## Count II

### Violation of M.G.L. c. 244§ 14

35. Plaintiffs repeat and re-allege paragraphs 1 through 44 as though set forth fully herein.

36. Massachusetts law provides for a strict statutory scheme for executing the power of sale in a mortgage. On information and belief, Defendant has violated Massachusetts law by purporting to exercise the power of sale in the Mortgage when it did not have standing to do so.

37. Defendant also violated Massachusetts law by foreclosing on the Property without providing Plaintiffs with adequate notice.

38. Counsel for Plaintiffs conducted a search of the Middlesex Registry of Deeds for an assignment of the Mortgage to Defendant. Counsel could not find any such assignment. As a result, it is unclear whether the Mortgage was assigned to Defendant.

39. Plaintiffs assert that Defendant produce proof of an unbroken chain of assignments of the Mortgage to it or in the alternative deed back the Property to Plaintiffs and pay damages.

## Count III

*Violation of Mass. General Law c.93A Due to Predatory Lending Practices That Doom Plaintiff to Foreclosure*

40. Plaintiffs repeat and re-allege paragraphs 1 through 39 as though fully set forth herein.

41. The Supreme Judicial Court in Commonwealth of Mass. v. Fremont Investment and Loan, 452 Mass. 733 (2008), outlined four factors that determine if an adjustable rate mortgage is presumptively unfair and in violation of M.G.L. c. 93A: (i) The rate of interest adjusts less than three years after the loan originates; (ii) The fully indexed rate is 3% or greater than the initial teaser rate of interest; (iii) The debt to income ratio of the mortgage is 50% or greater; and (iv) The loan comprises the entire value of the property.

42. The Loan given to Plaintiffs met all four factors outlined above. The Loan, therefore, was presumptively unfair and in violation of M.G.L. c. 93A.

43. The Loan doomed Plaintiffs to foreclosure because it was made based upon the value of the Property and not on their ability to repay it.

44. Defendant assumed the benefits and liabilities of the Loan when it assumed an interest in it.

45. Plaintiff asserts that the Property should be deeded back to them and Defendant should pay damages.

## Count IV

*Intentional Infliction of Emotional Distress*

39. Plaintiffs repeat and re-allege paragraphs 1 through 38 as though set forth fully herein.

8

46. Defendant knowingly and intentionally foreclosed on the Property, knowing that it had promised to review Plaintiffs for a loan modification, and has attempted to evict Plaintiffs from their home. Stripping away one's rights of ownership of a home while concurrently acting in bad faith is contrary to long recognized principles of law and public policy.

47. As a result of the foreclosure and the attempted eviction, Plaintiffs have suffered severe emotional distress.

48. Plaintiffs assert that Defendant should pay damages.

## Count V

### Violation of M.G.L. c. 183 § 28C

49. Plaintiffs repeat and re-allege paragraphs 1 through 48 as though fully set forth herein.

50. The Loan was subject to M.G.L. c. 183 §28C as it paid off all of "an existing home loan that was consummated within the prior 60 months" of the closing date.

51. M.G.L. c. 183 §28C places the burden on the lender to demonstrate that the Loan was in the borrower's interest.

52. The Loan was clearly not in Plaintiff's best interest. The real cost of Loan resulted in an approximately 50% increase in the monthly mortgage payment, destroyed the Plaintiff's equity in the Property, replaced a fixed rate of interest with an adjustable rate, and doomed them to foreclosure.

53. As the purported assignee mortgagee, Defendant has assumed the benefits and the liabilities of the Loan.

54. Defendant has not made any reasonable offers to cure its violation of M.G.L. c. 183 §28C.

55. Plaintiffs assert that the Property should be deeded back to them and Defendant should pay damages.

## Count VI

*Violation of M.G.L. c. 93A Due to Violation of M.G.L. c. 183C and 940 CMR 8.06(15)*

56. Plaintiffs repeats and re-allege paragraphs 1 through 55 as though fully set forth herein.

57. M.G.L. c. 183C and 940 CMR 8.06(15) prohibits lenders from making unreasonably risky loans that are unfair and/or unconscionable, and that fail to take into account a borrower's ability to pay, instead lending based on the value of the collateral and that secure a home mortgage loan under circumstances where the lender could not have reasonably known and ascertained that the borrower would be able to make the scheduled payments.

58. Violations of consumer protection statutes and regulations such as M.G.L c. 183C and 940 CMR 8.06 are per se deceptive, and so a violation of M.G.L. c. 93A.

59. Defendant assumed the benefits and liabilities of the Loan when it assumed an interest in it.

60. Pursuant to M.G.L. 93A, Plaintiffs sent a demand letter to Defendant stating a reasonable demand to end this matter without litigation. Defendants have not accepted Plaintiff's demands nor have they made a reasonable counter offer.

61. Plaintiffs assert that Defendant should pay damages.

## Count VII

*Violation of M.G.L. c.93A Due to Attempting to Enforce an Unfair Contract*

62. Plaintiffs repeat and re-allege paragraphs 1 through 61 as though fully set forth herein.

63. Pursuant to M.G.L. 93A, Plaintiffs sent a demand letter to Defendant stating a reasonable demand to end this matter without litigation. Defendants have not accepted Plaintiff's demands nor have they made a reasonable counter offer.

64. The Mortgage was an illegal and predatory loan in violation of M.G.L. c 183 §28C; in violation of 940 CMR 8.06(15). Each of these facts, standing alone, would grant Plaintiffs recourse under M.G.L. c. 93A. Additionally, the Loan is presumptively unfair under the Fremont test.

65. Defendant has claimed to acquire the Loan and enforced it against Plaintiffs despite the Loan's illegal and predatory nature. Furthermore, Defendant tried to collect on the Loan and refused to modify its illegal terms.

66. Defendant's prior attempts to collect on and enforce the Loan were unfair and deceptive actions, in violation of M.G.L. c. 93A.

67. Plaintiffs assert that damages should be paid to them.

## Count VIII
### *Negligence*

68. Plaintiffs repeat and re-allege paragraphs 1 through 67 as though fully set forth herein.

69. Plaintiffs have diligently provided Defendant with the documents required for a loan modification.

70. Defendant had a duty to operate its loan modification procedures with due care and reasonable competence.

71. Defendant informed Plaintiffs that their application was complete and that they were under review for a loan modification.

72. Less than a month after Defendant informed Plaintiffs they were under review, Defendant

foreclosed on the Property.

73. Defendant acted negligently by both not completing a review of the Plaintiffs for loan modification and by not communicating its decision to Plaintiffs.

74. Plaintiffs were damaged by Defendant's negligent review by not receiving a loan modification, which they qualified for. Additionally, Plaintiffs were damaged by Defendant's negligent failure to provide them with notice of the foreclosure. Failure to provide notice violated Massachusetts law and deprived the Plaintiffs of the opportunity to act appropriately and in their best interest.

75. Plaintiff asserts that Defendant must deed the Property back to them and pay damages.

## Count IX

### Unjust Enrichment

76. Plaintiffs repeat and re-allege paragraphs 1 through 75 as though fully set forth herein.

77. As stated, the Loan is an illegal and unenforceable contract.

78. Moreover, as stated, there is no record of the Loan ever being assigned to Defendant.

79. Defendant attempted to collect on and has foreclosed on an illegal and predatory loan, unjustly enriching itself.

80. Plaintiffs assert that the Property should be deeded back to them and Defendant should pay damages.

**WHEREFORE**, Plaintiffs Edimara Demelo and Edislon Demelo, respectfully request that this Court:

A. Issues an order granting Plaintiffs a *lis pendens* on the Property for the duration of this litigation;

B. Orders the Property to be deeded back to the Plaintiffs;

C. Awards actual damages in an amount to be determined at trial;

D. Awards punitive damages in an amount to be determined at trial;

E. Awards reasonable costs of this litigation and all other costs incurred by Plaintiff in his fight to keep his house;

F. Awards such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Edimara and Edilson DeMelo

By their Attorneys

Carmenelisa Perez-Kudzma
BBO# 633520
Michael Shepsis,
BBO #676171
Perez-Kudzma Law Office
413 Boston Post Road
Weston, Ma 02493
781-209-5596
attorney.carmenelisa@gmail.com

VERIFICATION

I, Edimara Demelo, based on personal knowledge, except where stated under information and belief, hereby swear under the pains and penalties of perjury that I have read the foregoing and it is a true and accurate account to the best of my belief.

_____          12/13/2011
Edimara Demelo                                   Date

I, Edilson Demelo, based on personal knowledge, except where stated under information and belief, hereby swear under the pains and penalties of perjury that I have read the foregoing and it is a true and accurate account to the best of my belief.

_____          12/13/11
Edilson Demelo                                    Date

14